AO 106 (Rev 04/10) Application for a Search Warrant

CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

6/25/20
JULIA C. DUDLEY, CLERK
BY: s/ ELLA SURBER
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

2593 LEEMASTER DRIVE, VANSANT, VA 24656

Case No. 1:20MJ90

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the **Western** District of **Virginia**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 922 (a)(1)(A) | Engaging in the business of importing, manufacturing, or dealing in firearms without a Federal Firearms License |

The application is based on these facts:

See Attachment C

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Brandon Vines
*Printed name and title*

Sworn to before me ~~and signed in my presence~~. telephonically.

Date: 6/24/20

City and state: Abingdon, VA

*Judge's signature*

Honorable Magistrate Judge Pamela Meade Sargent
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon, Division

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A SEARCH WARRANT FOR THE RESIDENCE LOCATED AT 2593 LEEMASTER DRIVE, VANSANT, VA 24656 | **FILED UNDER SEAL**<br><br>Case No. _____ |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Brandon Vines being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. Your Affiant, Brandon Vines, is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Department of Justice, and has been employed in such capacity since December 2013. Your Affiant has successfully completed the Criminal Investigator Training Program and the ATF Special Agent Basic Training Academy at the Federal Law Enforcement Training Center, located in Glynco, Georgia, where your Affiant received specialized training in the investigation of federal crimes involving firearms, alcohol and tobacco diversion, arson and explosives and narcotics. Your Affiant is currently assigned to the Washington Field Division, Bristol Field Office, which investigates violations of federal firearms laws, violent crime and armed narcotics trafficking. During my tenure with ATF, one of my primary duties has been investigating firearms and narcotics trafficking enterprises. During my time with the ATF, I have received training on narcotics and firearms trafficking and the methods used by narcotics and firearms traffickers. In addition, I have been involved in arrests and interviews of narcotics and firearms traffickers. I have also been involved in wiretap investigations and the execution of search warrants in relation to narcotics and firearms trafficking. As a result, I am familiar with the manner and means of narcotics and firearms trafficking.

2. Prior to my employment with ATF, I was a sworn police officer with the Memphis Police Department for over five years. Throughout my career as a sworn police officer with the Memphis Police Department, I have participated in numerous investigations and prosecutions involving state firearms and drug-related offenses.

3. I am an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 United States Code, and am empowered by law to conduct investigations and to make arrests for the offenses enumerated in Section 2516 of Title 18 United States Code.

4. I know that according to Title 18, United States Code, Section 922(a)(1) it shall be unlawful for any person except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce.

5. Based on my training and experience and the facts, as set forth in this affidavit, there is probable cause to believe that Lonnie COMPTON has committed violations of Title 18, United States Code, Section 922(a)(1). There is also probable cause to search the residence of COMPTON described in Attachment A for evidence of this crime and contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

6. As part of ATF's mission, from 2017 to 2019, Virginia State Police SA Walt Parker has been attending different flea market and trading center venues in southwest Virginia identifying individuals who appear to be in the business of dealing firearms without a Federal Firearms License (FFL). SA Parker would identify individuals who attended these venues on a regular basis with tables set up to sell firearms. SA Parker would note the individuals who attended multiple venue locations with the same objective of selling firearms. SA Parker would also observe the dealers inventory, looking at the quantity and type of firearms for sale. When SA Parker identified individuals who appeared to be engaged in the business of selling firearms, he would speak to them. SA Parker would educate and warn these individuals. SA Parker would describe how they were showing signs of dealing firearms without a FFL due to their consistency, businesslike manner and operations, and other specific factors. SA Parker would then tell the individual they needed to obtain a FFL if they continued to engage in the business of selling firearms. COMPTON and Leon ST. CLAIR have been displaying large quantities of various types of firearms for trade or sale at the Indian Mountain Trade Center and observed by VSP SA Parker for the past three years on a regular basis. COMPTON and ST. CLAIR are always set up in the same booth respectively underneath a large covered shed. COMPTON'S rental location is A15 and ST. CLAIR'S rental location is A16. They set up next to each other with their rental locations side by side. They both have homemade gun racks on their rented booths to aid their display of shotguns and rifles. VSP SA Parker has observed COMPTON and ST. CLAIR numerous times with similar numbers of firearms displayed for trade or sale. COMPTON will display approximately 20 long guns and 15-20 handguns of various makes and models. COMPTON and ST. CLAIR always park their vehicles backed in behind their booths to ease their loading and unloading of firearms. VSP SA Parker has observed additional firearms inside their vehicles, indicating the two men only display a portion of their inventory. VSP SA Parker has observed the two men

getting firearms out of their vehicles or putting firearms in their vehicles while parked at their booths. On more than one occasion, VSP SA Parker has advised COMPTON that firearm sales are for instate residents only and Virginia resident to Virginia resident. Also, that he was allowed to sell his personal collection but could not keep trading and buying firearms and restocking his inventory for the purpose of selling; if he continued he would need to get an FFL. Below is a photo of the rental booths which COMPTON and ST. CLAIR occupy.



7. In October 2019, ATF began conducting surveillance at the Indian Mountain Trade Center in Wise, VA in order to identify any individuals who appeared to be engaging in the business of selling firearms without a Federal Firearms License. The Indian Mountain Trade Center is located at 6988 Orby Cantrell Hwy, Wise, Virginia 24293. The flea market is in close proximity to Kentucky and is usually operated several days a week. The flea market is an open air market with several large covered sheds. There are usually six to seven firearm vendors at the market every Wednesday and usually the same firearm vendors from week to week. The flea market also has numerous other vendors who sell non-firearm related items. The vendors pay a fee to rent a booth at the flea market and most vendors rent the covered booths monthly. COMPTON has occupied the same covered booth since ATF began the investigation in September of 2019. COMPTON is almost always present and set up to trade and sell firearms spring, summer, fall, and winter if weather permits. COMPTON has been observed set up to trade or sell firearms during very cold weather. Below is a photo of the flea market.



8. From October 2, 2019, to March 18, 2020, investigators regularly attended the Indian Mountain Trade Center on Wednesdays. Investigators attended the Indian Mountain Trade Center on 12 occasion between the aforementioned timeframe. COMPTON was observed at the flea market displaying a large number of firearms for sale on all 12 occasions from October 2, 2019 to March 18, 2020. The flea market was closed for several weeks due to the Covid-19 pandemic. Once the flea market reopened investigators once again began attending the flea market. From May 20, 2020 to June 10, 2020, COMPTON was observed at the Indian Mountain Trade Center on five occasion with firearms displayed for sale. Additionally, investigators discovered that COMPTON sold firearms in a warehouse parking lot in Grundy, VA. COMPTON was observed selling firearms in a parking lot in Grundy, VA on five occasions from January 31, 2020 to June 12, 2020. COMPTON regularly displayed 20 to 40 firearms for sale. When COMPTON would sell firearms at the Indian Mountain Trade Center he would display his rifle/shotguns in a gun rack which held at least 20 long guns. COMPTON would display his handguns on a table. COMPTON occupied the same tables at the flea market from week to week. When COMPTON sold firearms in the parking lot at the warehouse in Grundy, VA he would display his long guns propped up in the bed of his white 2010 Chevy Silverado pickup truck bearing VA tag XJX1009. COMPTON had a table set up which displayed his handguns. Additionally, while the make and model of firearms in COMPTON'S inventory did appear to change, the quantity of firearms in his inventory appeared to remain the same during the time period. For this reason, investigators believe COMPTON was replenishing his inventory. Below is a photo of COMPTON'S firearms displayed for sale in Grundy, VA on January 31, 2020. The white Chevy Silverado below is registered to COMPTON. COMPTON had his long guns displayed in the bed of his truck propped up on the bed cover. Also there was a table behind COMPTON'S truck with firearms displayed for sale.



9. Below is a photo of COMPTON and his firearms displayed for sale at the Indian Mountain Trade Center on February 3, 2020.



10. On October 23, 2019, ATF SA Vines, acting in an undercover capacity, attended the Indian Mountain Trade Center in Wise County, VA. SA Vines walked into the flea market and approached Lonnie COMPTON who had a table set up with firearms displayed for

sale. COMPTON had numerous handguns, rifles, and shotguns for sale. SA Vines asked COMPTON if he could see a rifle that he had displayed for sale. SA Vines asked COMPTON about the rifle. COMPTON said the rifle was an SKS rifle 7.62 X 39 caliber. SA Vines asked COMPTON how much the rifle cost. COMPTON said he was going to sell it for $300 dollars. COMPTON told SA Vines that he guarantees all of his sales. SA Vines attempted to negotiate the price with COMPTON. COMPTON said he is giving it away for $300 and he could get $400 anywhere he wanted to take it. SA Vines bought the SKS rifle from COMPTON for $300 dollars with ATF Agent Cashier funds. COMPTON had approximately 25 rifles for sale as well as over ten handguns for sale. SA Vines tested fired the SKS rifle on 10/25/2019 and found the rifle to be operable.

11. On February 12, 2020 ATF SA Vines, acting in an Undercover (UC) capacity, attended the Indian Mountain Trade Center flea market in Wise, VA. Upon arriving at the flea market, SA Vines exited his vehicle and began walking though the flea market in order to identify those individuals who appeared to be engaging in the business of dealing firearms without an FFL.

12. SA Vines observed Leon ST. CLAIR and Lonnie COMPTON with tables at the same location in which they have been observed multiple times in the past. COMPTON was talking with Private Individual # 1 (herein referred to as PI # 1) and the two appeared to be negotiating a firearm transaction involving multiple firearms. COMPTON had approximately 15 long guns for sale in a rack. Additionally, COMPTON had at least 10 handguns for sale. SA Vines observed PI # 1 attempting to negotiate a deal with COMPTON. PI # 1 had an SKS that he/she was using as part of the deal. SA Vines asked PI # 1 what he/she was wanting for the SKS. PI # 1 said $400. PI # 1 said he/she had two magazines and 100 rounds of ammo to go with the SKS. PI # 1 had an AR rifle and the SKS laying on the table near COMPTON. PI # 1 grabbed the AR and walked off. He told COMPTON he would be right back. SA Vines asked PI # 1 if he could look at the SKS as he was walking off and he told SA Vines to go ahead.

13. SA Vines observed PI # 1 and COMPTON continue to negotiate a gun deal. While the negotiation was going on, two unknown males began talking to PI # 1 about a handgun in that which PI # 1 was attempting to trade COMPTON. SA Vines asked one of the unknown males what they were looking at. The male said it was a TP9. The male picked up the handgun which was in the box and showed it to SA Vines. PI # 1 said he/she was trying to trade the handgun to COMPTON, but he/she didn't know if he/she was going to do it. Shortly after, COMPTON and PI # 1 continued to negotiate the gun deal. PI # 1 told COMPTON he/her had already given him too much. COMPTON told PI # 1 that he/she would be getting a nice gun. PI # 1 told COMPTON he (COMPTON) was getting two guns. COMPTON replied, "I know, but I got to sell two guns and this ammo, it's going to take me a year to do that."

14. SA Vines observed PI # 1 in the parking lot with the two unknown males that he/she was talking to earlier. SA Vines walked over to PI # 1 and the unknown males. PI # 1 was holding an AR type rifle and one of the unknown males was holding what appeared to be a shotgun. SA Vines interrupted the three males and asked PI # 1 about the SKS rifle he/she

was using to negotiate with COMPTON. PI # 1 said he/she sold it to COMPTON. PI # 1 told SA Vines that COMPTON would sell the rifle. SA Vines asked PI # 1 the sale price for the SKS rifle. PI # 1 said, with the ammo probably about $375. PI # 1 went on to explain it's according to what he had in that one (referring to the pistol that he/she got from COMPTON). PI # 1 said COMPTON might price it for $300.

15. After speaking with PI # 1, SA Vines approached COMPTON. SA Vines asked COMPTON if he bought the SKS and if he had would he sell it. SA Vines was referring to the same SKS, that PI # 1 was selling minutes earlier. COMPTON said he would sell the rifle. SA Vines asked COMPTON how much he wanted for the rifle. COMPTON said he bought the rifle for $300 and the high capacity magazine for $25. SA Vines told COMPTON he (SA Vines) was sure he (COMPTON) wanted to make some money on it. Before COMPTON responded, Leon ST. CLAIR said "that's the name of the game." COMPTON told SA Vines if he (SA Vines) would just give him a little bit he (COMPTON) would sell it. SA Vines asked COMPTON if he would take $350 and he agreed. SA Vines purchased the SKS, one high capacity magazine, and one smaller magazine for $350.

16. According to COMPTON he purchased the rifle and high capacity magazine from PI # 1 for $325. COMPTON sold the rifle and high capacity magazine to SA Vines for $350, less than thirty minutes after purchasing the rifle and magazine from PI # 1. COMPTON profited $25 from the sale.

17. The SKS rifle was test fired by SA Vines on February 18, 2020 and found to be operable.

18. On February 26, 2020, while conducting surveillance at the Indian Mountain Trade Center, SA Vines observed Lonnie COMPTON with a table at the same location in which he has been observed multiple times in the past. COMPTON had over 20 long guns for sale in a rack. Additionally, COMPTON had at least 10 handguns for sale. While SA Vines was standing at the table there was a white male looking at a Henry rifle COMPTON had in a box. COMPTON told the white male that the rifle was new in the box.

19. On March 11, 2020, members of the ATF, Bristol Field Office, through the use of ATF Confidential Informant (CI), herein referred to as CI # 1, purchased a Smith & Wesson model 6906, 9mm bearing a serial number of TFK6860 from Leon COMPTON. CI # 1 was deployed by SA Vines on foot at the Indian Mountain Trade Center Flea Market. CI # 1 walked up to COMPTON'S table. SA Tabor, acting in an undercover capacity, walked up to Leon ST. CLAIR'S table which was located next to COMPTON'S table. SA Tabor asked ST. CLAIR how much he wanted for a 9mm pistol and ST. CLAIR said he wanted $400. SA Tabor said he used to have one, but he got rid of it. ST. CLAIR pulled a pistol out of his pocket and told SA Tabor that's the pistol that he carries. COMPTON can be heard in the background talking to an unknown male. COMPTON told the unknown male he (unknown male) wanted a .38 the other day and now he has it. The unknown male told COMPTON that he came to him and he didn't have it. COMPTON said he didn't have it at the time and he just got it. COMPTON told the unknown male he wanted $525 for the

.38 revolver. CI # 1 asked COMPTON how much he wanted for a Smith & Wesson pistol. COMPTON said he wanted $400 for the pistol. CI # 1 paid COMPTON $400 for the pistol. CI # 1 purchased the pistol from COMPTON for $400. Following the purchase by CI # 1, the CI returned to SA Vines at 11:25 a.m. and provided him with the Smith & Wesson pistol that was purchased from COMPTON. CI # 1 purchased from COMPTON a Smith & Wesson 6906, 9mm pistol bearing a serial number of TFK6860. The pistol was test fired on March 12, 2020 and found to be operable.

20. During the purchase, COMPTON never asked CI # 1 if he/she was a Virginia resident nor did he ask him/her if he/she could legally purchase a firearm. CI # 1 was in fact not a Virginia resident. Additionally, CI # 1 is prohibited from possessing firearms due to a previous felony conviction.

21. On March 18, 2020 ATF SA Tabor, acting in an Undercover (UC) capacity, attended the Indian Mountain Trade Center flea market in Wise, VA. At 10:47a.m., SA Tabor walked up to the booth of Lonnie COMPTON. SA Tabor picked up a pistol and COMPTON said he wanted $200.00 for it. SA Tabor observed what appeared to be a new in the box Smith and Wesson .380 caliber pistol with serial number RCU1065.

22. Following the operation, SA Vines queried the Smith and Wesson .380 caliber pistol through the ATF Firearms Tracing Center (NTC). According to the NTC, A&A Enterprises in Norton, VA filed a Multiple Sale Report on 10/23/2019. According to the Multiple Sale Report, James BOGGS purchased a Smith and Wesson M&P .380 caliber pistol bearing serial number RCU1065 on October 22, 2019. Based on information from the Multiple Sale Report filed by A&A Enterprises, your affiant has reason to believe that COMPTON purchased the pistol at some point following October 22, 2019 and displayed it for sale by March 18, 2020.

23. While conducting surveillance of COMPTON, investigators observed COMPTON'S white Chevy Silverado pickup truck bearing a Virginia tag of XJX1009 parked behind him on almost every occasion. Based on these observations, your affiant believes COMPTON utilizes his Chevy Silverado to transport his firearms to and from the flea market. According to the Virginia Department of Motor Vehicles the white 2010 Chevy pickup truck bearing Virginia tag XJX1009 is registered to Lonnie and Geneva Compton at a P.O. Box in Vansant, VA. Below is a photo of COMPTON at the Indian Mountain Trade Center on June 10, 2020 with his white Chevy Silverado parked behind him.



24. On February 7, 2020, ATF Industry Operations Investigator (IOI) James Bowen queried Lonnie COMPTON in the ATF Federal Licensing System (FLS) to determine if he had been, or is currently associated with holding a FFL. The search revealed that COMPTON was previously associated with two separate FFL's:
    - FFL#: 1-54-027-01-8G-23195
        - Bryans Stop & Shop, 2835 State Creek Road, Grundy, VA 24614. Bryan's
        - The Licensee/Permittee for the FFL was Tony and Patricia Compton.
        - The FFL renewed on 06/02/2005 and expired on 07/01/2008.
    - FFL#: 1-54-027-01-1H-05256
        - Bryan's Stop & Shop, 2835 Slate (State) Creek Road, Grundy, VA 24614.
        - The Licensee/Permittee for the business was Tony Compton.
        - The FFL renewed on 07/24/2008 and expired on 08/01/2011.

25. The License Registration Report for both FFL's, listed Lonnie COMPTON as a "Responsible Person." According to IOI Bowen, a Responsible Person under an FFL has the power to direct the management and policies of the business entity for which the FFL is being applied. This means, Lonnie COMPTON had the authority to treat the FFL as his own, thus making him responsible for upholding the expectations of an FFL holder.

26. According to the check of the Federal Licensing System, both of the FFL's that COMPTON was previously associated with are no longer valid. The most recent license expired in 2011.

27. ATF, through the use of an undercover Special Agent and Confidential Informant, purchased the following firearms from COMPTON:

    a. Yugoslavia SKS 59/66, 7.62 caliber rifle, SN: 564972
    b. Chinese made SKS 7.62 caliber rifle, SN: 02603

    c. Smith & Wesson 6906, 9mm pistol, SN: TFK6860

28. ATF SA Levesque examined each of the above firearms for purposes of determining classification under Title 18 U.S.C., Chapter 44 and whether each firearm has moved in interstate or foreign commerce. SA Levesque determined that none of the above firearms were manufactured in the State of Virginia. It is the opinion of SA Levesque that if these firearms were received and/or possessed in the State of Virginia, they traveled in or affected interstate and/or foreign commerce.

29. On April 10, 2020, SA Vines observed a white Chevy pickup truck which looked similar to the 2010 white Chevy pickup registered to COMPTON parked at 2593 Leemaster Dr. in Vansant, VA. The white Chevy pickup was parked behind a white GMC pickup truck bearing a VA tag of JEE-6436. According to the Virginia DMV, the white 2002 GMC truck is registered to Geneva and Lonnie Compton. Additionally, there was a black sign in the front yard beside the drive with the following written in white: "2593 Compton."

30. Based on my training and experience, I know that individuals who engage in the business of buying and selling firearms keep records and receipts of firearms and firearms parts and that they keep a large inventory of firearms to sell and trade. I also know that individuals who engage in the business of buying and selling firearms will store their firearms, records, and receipts of firearms and firearm parts at their residence.

31. I know that based on my training and experience, vendors and sellers who operate in or at flea markets and trading centers handle large amounts of U.S. currency while in the course and scope of selling firearms.

32. Based on the information listed above, I believe that evidence of a violation, listed in attachment "B" of this affidavit, of Title 18 United States Code, Section 922(a)(1) (in that COMPTON is engaged in the business of dealing firearms without an FFL) will be located at the residence and surrounding curtilage of Lonnie COMPTON, 2593 Leemaster Dr. Vansant, VA 24656, which is more fully described in Attachment "A" of this Affidavit.

Cody Vines
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to and subscribed before me telephonically this 24th day of June, 2020.

U.S. Magistrate Pamela Sargent

Seen by:

_____
Whit Pierce, AUSA

## ATTACHMENT A

### DESCRIPTION OF PLACES TO BE SEARCHED

### THE PREMISES:

A brick house with a black sign in the front yard beside the driveway with the following written in white: "2593 Compton." There is an outbuilding at the end of the driveway.

### VEHICLES/CURTILAGE:

Any and all vehicles and outbuilding(s) on the property.

### LOCATION OF THE PREMISIES:

Residence is located at 2593 Leemaster Dr. Vansant, VA 24656.
Below is a satellite photo of the residence.



Below is a street view photo of COMPTON'S residence taken on or about September 2009. Based on your affiant's personal observations, the home appears substantially the same in its current state.



## ATTACHMENT B

## DESCRIPTION OF EVIDENCE TO BE SEARCHED FOR AND SEIZED

**Firearms**

Firearms and other items pertaining to the possession, purchase, sale or trade of firearms, including gun cases, magazines, holsters, spare parts for firearms, firearms cleaning equipment, photographs of firearms or of persons in possession of firearms, receipts, and records, for the purchase, sale, manufacture and/or repair of all these items.

**Records Relating to Firearms**

Any and all records relating to the possession, purchase, sale, or trade of firearms, including financial records and bank statements; documents and records that indicate or relate to the purchase and/or sale of firearms; U.S. currency, cashier's checks, and money orders; gun show materials, including advertising signage, gun displays, and gun racks, and any other materials or documents that could be used to advertise the sale of firearms.